UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                         Criminal Case No. 18-20199

Kristopher Hobson,
                                                     Sean F. Cox
    Defendants.                     United States District Court Judge

_____/

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

In February 2018, during an investigation into a stolen vehicle re-tag ring, Detroit police officers obtained and executed a search warrant at Defendant Kristopher Hobson's residence. The search uncovered, among other things, two stolen firearms. These firearms, discovered in Defendant's bedroom, are the basis for his two pending felon-in-possession charges.

Defendant has moved to suppress all items seized during the search, alleging various defects in the warrant. For the reasons below, the Court shall deny his motion because the warrant was sufficiently particular and supported by probable cause and because the firearms were lawfully seized in plain view.

## **BACKGROUND**

Charged with two counts of felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Doc. # 12), Defendant Kristopher Hobson has moved to suppress all evidence seized during the February 7, 2018 search of his residence (Doc. # 37). The Court held an evidentiary hearing on his motion on June 27, 2018, during which the Government presented two witnesses–Detroit Police Sergeant Franklin Gerard and Detroit Police Detective Jon Metiva. The Government also

introduced, as exhibits, the search warrant, the warrant affidavit, and photographs taken during the execution of the warrant.

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

The events leading up to the execution of the search warrant are described in the warrant affidavit prepared by Detective Metiva. In it, he averred that in December 2017, officers of the Detroit Auto Theft Task Force were conducting an investigation into a stolen vehicle re-tag ring. During the investigation, they recovered a stolen 2007 Chevrolet Trailblazer that had been re-tagged with a fraudulent VIN number. Mail inside the vehicle was addressed to a residence at 5290 W. Outer Drive in Detroit, Michigan, leading the officers to turn their attention to that location.

Task Force officers then conducted numerous surveillance operations at the address. On February 1, 2018, officers observed an individual in a black/blue Tahoe drive to the location, go inside, and then leave in the vehicle. A check on the Tahoe's license plate revealed that the plate number matched a 2015 GMC Sierra. This same Tahoe was also involved in a terminated high speed chase with Southfield police officers two days later.

On February 2, officers saw a white Chevrolet Trailblazer parked in the rear of the

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

2

backyard of the Outer Drive residence. Also at the residence was a black Trailblazer parked in a manner that concealed it from the street. Two days later, a reliable confidential source contacted Task Force officers and reported having been in contact with the individuals at the Outer Drive residence. The source had also obtained the VIN number for the white Trailblazer. A check on that number revealed that the vehicle had been stolen.

The surveillance culminated in the execution of a search warrant by the Task Force at the Outer Drive residence on February 7. During the search, officers recovered three stolen Trailblazers–the two from the backyard and one from the garage. They also arrested a man present at the address, who stated that his step-brother, Kristopher Hobson, had brought the cars there. The arrestee also informed the officers that Hobson drove a black Yukon and lived at 18714 Kentucky.

That same day, officers went to the Kentucky residence and observed the black/blue Tahoe they had seen a few days prior in the yard, along with a black Cadillac Escalade, a black Yukon Denali, and a vehicle under a tarp.

That evening, Detective Metiva prepared an affidavit and obtained a search warrant for the Kentucky residence and its curtilage. The warrant authorized the officers to seize the following evidence:

> All evidence including, stolen vehicles, donor vehicles, vehicle parts, vehicle identification plates, tools to dismantle vehicles, titles registrations, cellular phones, desk top computers, laptop computers, tablets, illegal or legal weapons, and any items related to this case or any other criminal activity.

In a clerical error, the warrant and supporting affidavit were mistakenly dated January 7, 2018 instead of the correct date, February 7, 2018.

That same evening, Task Force officers executed the search warrant. Sergeant Gerard

was among the first officers to enter the residence as part of the entry team. The team conducted a protective sweep of the residence, during which Gerard entered an upstairs bedroom in the northwest corner of the house. Inside, he saw a Glock handgun lying in plain view on the bed, which he secured for safety purposes. After he did so, he continued his protective sweep by checking the room's closet. There, he saw a shotgun in an open case leaning against the wall. Gerard secured this firearm as well. He then informed other Task Force officers, including Detective Metiva, that he had found the firearms.

Once the protective sweep concluded, Detective Metiva entered the residence to conduct the search. He also went to the northwest bedroom, where he discovered an MDOC identification card for Kristopher Hobson lying in plain view in the top drawer of a dresser. He also found a State of Michigan identification card, also Kristopher Hobson's, lying on top of a toolbox. Metiva was familiar with Hobson through his work with the Task Force and was aware that Hobson was a felon. Knowing that it is illegal for a felon to possess firearms, Metiva seized the two firearms found in Hobson's bedroom. A LEIN check on those weapons later revealed that they were stolen.

## CONCLUSIONS OF LAW

Defendant has challenged the search warrant on three grounds, arguing that the warrant: (1) lacked probable cause; (2) was stale; and (3) failed to adequately describe with particularity the person or things to be seized. The Court shall address each in turn.

### I. The Warrant Did Not Lack Probable Cause

First, Defendant argues that the warrant lacked probable cause. Probable cause is not a high bar; the affidavit need only show "a fair probability that contraband or evidence of a crime

4

will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This is a "practical, common-sense decision," and the reviewing court must simply "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238-29. The affidavit met that standard here.

The affidavit contained ample facts describing a stolen vehicle re-tag ring and linking evidence of that illegal activity to the Kentucky residence. It described in detail the underlying investigation that led officers to the Outer Drive residence, where they discovered several stolen vehicles. The search of that residence then led the officers to connect Defendant (a familiar face to the officers) to that location while also discovering that he lived at 18714 Kentucky. Surveillance of his residence then revealed two vehicles of particular interest: (1) the Tahoe with the improper license plate, which had been seen at the Outer Drive residence and had been involved in a high-speed chase, and (2) a black Yukon, the car Defendant reportedly drove. All of this information was more than enough to establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). Thus, the warrant was supported by probable cause, and the magistrate did not act arbitrarily in issuing the warrant. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) ("[A]n issuing magistrate's discretion should only be reversed if it was arbitrarily exercised.").

## II. The Warrant Was Not Stale

Next, Defendant argues that the search warrant was stale, observing that although the warrant affidavit was dated January 7, 2018, it was executed on February 7, 2018. *See* Fed.R.Crim.P. 41(e)(2)(A)(i) (requiring a warrant to be executed within 14 days). Yet this is nothing more than a clerical error. As Detective Metiva explained, he drafted the affidavit,

5

obtained the warrant, and executed it all on the same day–February 7th. Indeed, most of the affidavit describes events that took place well-after January 7th. A mere typographical error is not grounds for invalidating the warrant. *See United States v. Durham*, 148 F. App'x 320, 326 (6th Cir. 2005) (declining to invalidate a warrant for a technical filing error); *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004) (holding a clerical error resulting in inconsistency between the dates on the warrant application form and the warrant itself did not invalidate the warrant); *United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) (declining to invalidate a warrant affidavit due to differences in dates resulting from a typographical error).

### III. The Warrant was Sufficiently Particular

Finally, Defendant contends that the warrant did not satisfy the Fourth Amendment's particularity requirement. *See United States v. Castro*, 881 F.3d 961, 964 (6th Cir. 2018) ("The Fourth Amendment demands that a search warrant 'particularly describ[e]' the places law enforcement may search and the things they may seize."). Specifically, he contests the catch-all provision included at the end of the warrant's operative sentence, which authorized officers to seize "any items related to this case or any other criminal activity."

The scope of a warrant "should be confined to evidence relating to a specific crime, supported by probable cause." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011). The "degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). When reading for particularity, a "commonsense contextual reading" suffices. *Castro*, 881 F.3d at 965.

Here, the challenged portion of the warrant can be unpacked into two parts: first, its authorization to seize any items related to "this case," and, second, its authorization to seize any

6

items related to "any other criminal activity." Neither is problematic.

As to the first part, the "express incorporation or cross-referencing of a supporting affidavit" can satisfy the particularity requirement. *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). Here, the affidavit accompanied the warrant. *Cf. Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (noting most Courts of Appeals have adopted the incorporation standard but declining to consider it when the warrant at issue did not incorporate other documents by reference and the affidavit did not accompany the warrant). And the warrant's opening paragraph explicitly referenced the affidavit, noting that it had been sworn to and that the magistrate had examined the affiant. Nearly identical language has been held to be "a sufficient cross-reference of the affidavit." *United States v. Rarick*, 636 F. App'x 911, 914 (6th Cir. 2016) ("The first sentence of the warrant was 'WHEREAS there has been filed with me an affidavit.'"). Finally, the warrant's reference to any items related to "this case" was preceded by a long, more specific list of items to be seized, most of which were clearly related to stolen vehicle-related offenses. Read in context, the phrase "related to this case" referred only to the stolen-vehicle related offenses under investigation. *See Andresen v. Maryland*, 427 U.S. 463, 480-81 (1976) (holding the use of the general term "crime" at the end of a list of specified and particular items referred to the specific crime mentioned earlier in the warrant); *Castro*, 881 F.3d at 965 ("Context shows that 'a crime' refers only to the list of crimes already mentioned."). For all these reasons, the phrase "any items related to this case" is not overbroad.

As for the second part, the Government concedes (rightfully so) that the catch-all phrase–"or any other criminal activity"–sweeps too broadly. "But an infirmity due to overbreadth does not doom the entire warrant." *Castro*, 881 F.3d at 965 (internal quotation

marks omitted). Instead, the remedy is to sever the offending phrase and suppress any evidence collected under it, admitting evidence collected under the valid portions that remain. *Id*. That remedy is apt here, as in *Castro*, because the "invalid section appears at the end of the operative sentence and can be severed without changing the meaning of the valid sections of the warrant." *Id*. at 966. And none of the evidence to be introduced at trial was seized under this catch-all authorization, meaning suppression is not warranted.[2]

Indeed, as to the firearms, no particularity issue arises because they were lawfully seized in plain view. An officer may seize evidence in plain view, without a warrant, if: (1) the item seized is in plain view, (2) the item's incriminating character is immediately apparent, (3) the officer is lawfully in the place from where the item can be plainly seen, and (4) the officer has a lawful right of access to the item. *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013). The seizure of the stolen firearms from Hobson's bedroom met these elements.

The search warrant, which was supported by probable cause, lawfully authorized the officers to conduct a thorough search of Hobson's residence for evidence of vehicle-related offenses, including "tools to dismantle vehicles" and "titles [and] registrations." This permitted officers to search areas where those items could be found, such as bedrooms and storage areas. During the protective sweep preceding the search, Sergeant Gerard entered a bedroom and discovered two firearms–one on the bed and one in an open case in the closet–both in plain view.

---

[2] Even if evidence had been seized under the catch-all authorization, the good-faith exception to the exclusionary rule would apply. *United States v. Leon*, 468 U.S. 897, 918-21 (1984). Like *Castro*, a "simple glance" at the warrant here would not have revealed "deficiencies glaring enough to make reliance on it unreasonable." 881 F.3d at 966. And, the officers limited their search to evidence of stolen-vehicle related offenses. *See id*. So, because the Court cannot conclude that the officers did not act with "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," suppression is not warranted. *Davis v. United States*, 564 U.S. 229, 238 (2011) (quotations omitted).

And Detective Metiva later found two forms of identification for Defendant, also in plain view. At this point, because Metiva knew that Defendant was a felon, the incriminating nature of the firearms was immediately apparent. *See* 18 U.S.C. § 922(g) (prohibiting possession of a firearm by a convicted felon); *United States v. Flores*, 193 F. App'x 597, 605 (6th Cir. 2006) ("The knowledge that Flores was a convicted felon gave the officers the right to permanently seize the gun."). Thus, his seizure of the firearms did not violate the Fourth Amendment.

## CONCLUSION AND ORDER

For the reasons above, IT IS ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                                                              s/Sean F. Cox
                                                                              Sean F. Cox
                                                                              United States District Judge

Dated: June 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2018, by electronic and/or ordinary mail.

                                                                              s/Jennifer McCoy
                                                                              Case Manager